CHRISTIAN H. MEYER, Respondent, *v.* LINDELL RAILWAY
COMPANY, Appellant.

### May 14, 1878.

1. In an action for damages for injuries sustained by being run over by a street-
   car, where it appears that plaintiff was guilty of negligence directly con-
   tributing to the accident, he must show that the injury could have been
   avoided if defendant had exercised ordinary care.

2. Where there has been mutual negligence, the negligence of each being the
   proximate cause of the injury, there can be no recovery.

3. A driver is not bound to regulate his speed at such a rate as may be neces-
   sary to avoid harm to persons crossing the road in an unreasonable and
   improper manner. It is as much the duty of persons crossing the street
   on foot to look out for vehicles as it is the duty of the driver to look
   out for those crossing the street.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

JAMES TAUSSIG, for appellant.

HITCHCOCK, LUBKE & PLAYER and T. G. C. DAVIS, for
respondent.

BAKEWELL, J., delivered the opinion of the court.

This is an action for damages for injuries to plaintiff
caused by the negligence of the driver of one of the street-
cars of defendant, which was a common carrier for hire,
having railroad tracks and a line of street-cars in the city
of St. Louis. There was a verdict and judgment for plaintiff
from which defendant appeals.

The accident happened about half-past five o'clock on the
afternoon of November 9th. It was getting dusk, but the
lamps in the street were not yet lit, and one could see
plainly a considerable distance. Plaintiff was lame, the left
leg being shorter than the other, in consequence of a
scrofulous affection of the hip-joint, with which he had been
attacked when a boy. He walked with a stick, was about
fifty-five years old, and his general health had been good,
with the exception mentioned, up to the time of the accident.

His testimony as to the circumstances under which he was hurt is : That he resided on Chouteau Avenue, on which street defendant had two parallel tracks, his house being on the north side, about fifty-five feet west of the crossing on Jefferson Avenue. He got on defendant's car to go east on the southern track ; and when the car arrived at a point opposite his house, he pulled the bell, the car was stopped at once, and he got out, and, without looking right or left, proceeded at once directly north, across the northern parallel track, to his house. The car was of the kind called "bob-tails," having its entrance in the rear, and drawn by a single mule. A car of defendant's line was at the same time coming west on the northern track. Plaintiff did not perceive this car until it was almost upon him, because it was so close to him. He then threw up his hand, in which he held a stick, and shouted "Stop!" The mule turned sharp to the south side, and the edge of the car struck the plaintiff and threw him down, injuring him very severely. He was confined to bed for two months, during two weeks of which time he could not be moved, and suffered excruciating pain. He used crutches for six months, and spent for medical attendance about $150. The plaintiff swears the car was about twenty steps off when he first saw it ; that he cannot say whether or not it was nearly at a stand-still when he was struck ; that he did not see what the driver was doing, and does not know whether the car was drawn by a horse or a mule ; that the car was coming at a gallop, at full speed, and was stopped at a distance of about ten feet from the point of the accident. He was in the middle of the track when he saw the car, and tried to jump to escape, but could not get out of the way, and was struck whilst jumping. The driver knew plaintiff, and, immediately after the accident, said he had not seen him.

Five other witnesses, who saw the occurrence, were examined. Hupp, examined for the plaintiff, says that the car coming west was about ninety or one hundred and twenty

feet off when he first saw it; that it went fast, under a gallop, as near as he could see; that it did not slack up on approaching plaintiff, but went full gallop; that it went the length of the car after the collision.   John Nagle and Dan. Myers testify that the car coming west was going full gallop, full speed, and that they did not see the driver do any thing with the brake.   Dan. Myers says the car was stopped in twenty feet.   The driver of the car from which plaintiff descended was examined for defendant, but he saw nothing of the accident.   A Mrs. Belden, who was in the car going west, says it was not going particularly fast at the time, and that the car went about its own length beyond the place of the accident, and was stopped there by the brake.   Jeffries was on the front platform of the car going west, for the purpose of taking the place of the driver when they reached the turn-table, a few blocks off.   He says that the driver and himself saw plaintiff when at the distance of the length of the court-room from him, and saw him on the track when a car-length off; that the driver pulled the lines and put on the brake, and stopped as quick as he could; that the car was going at a slow trot when it reached the Jefferson Avenue crossing; that it slacked up at that crossing, in accordance with the directions to drivers to go slow at every crossing, and the mule was just getting into its trot again when the other car was about thirty or forty feet off; that he saw plaintiff when thirty feet off; that the car could be stopped in fifteen feet, and might have been stopped before striking plaintiff; and that the driver did check up, and the witness expected plaintiff would get off the track, as he had only two steps to take to do so.   This witness says that plaintiff was not struck at all; that he fell two and a half feet north of the track, and was off the track when he held up his cane and dropped over.

Four lengthy instructions were given at the instance of plaintiff, and no less than thirteen at the instance of defendant.   To the law of negligence and contributory

negligence as laid down in the treatise on the subject thus compiled, the defendant does not object.

It is complained that the court erred in refusing an instruction in the nature of a demurrer to the evidence, at the close of plaintiff's case, as there was no evidence introduced by plaintiff tending to show that the driver of defendant saw plaintiff, or could have stopped the car if he had seen him. The record does not show that such an instruction was asked at the close of plaintiff's case; but this is wholly immaterial. The question is not whether such an instruction would have been proper at the close of plaintiff's case, but whether at the conclusion of the whole case the court should have taken the case from the jury, and declared as a matter of law that on the whole evidence plaintiff was not entitled to recover. If there was a total want of evidence of any carelessness of defendant directly contributing to the injury, or if there was clear and uncontradicted evidence of negligence on the part of plaintiff directly causing the injury to himself, the jury cannot find for plaintiff, and it is the duty of the court to say so.

The rule in these cases is, that if there has been mutual negligence, and the negligence of each party was the proximate cause of the injury, no action can be maintained. But though there be negligence on the part of the plaintiff, yet if at the time of the injury it might have been avoided by defendant in the exercise of reasonable care and prudence, an action will lie. It was certainly extreme negligence for a lame man, or for any man, to get off a street-car on the side next to the parallel track without looking to see whether another car was approaching. That negligence, of course, would excuse no one in running him down, but it does throw on plaintiff the burden of showing, as a condition precedent to recovery, that defendant, not by extreme vigilance but by the use of mere ordinary care, might have avoided the accident, and that that ordi-

nary care was not employed.   At the close of plaintiff's case
there was no evidence that defendant's driver saw plaintiff
at all.   It is not to the purpose that he might have seen
him had he looked straight ahead.   The driver of any car
may have his attention momentarily diverted from the track
immediately before him without failing in the strictest care.
It is true that plaintiff's witnesses say that the mule was
going " at full speed," at a gallop, and at " full gallop."
The mere fact that a mule in a " bob-tail " car is permitted
to gallop is no evidence of want of ordinary care on the
part of the driver; and at the close of plaintiff's case the
cause might properly have been withdrawn from the jury,
because, giving the utmost weight to all testimony as to
every circumstance making in favor of plaintiff, he had
entirely failed to prove that the accident, which had been
rendered possible by his own negligence, had been directly
caused by the recklessness or want of ordinary care of
defendant.

The testimony introduced by defendant showed that the
driver saw plaintiff before he fell; that he was probably
fifty feet off when first seen, and was seen on the track
when a car-length off, and that the car could be stopped in
fifteen feet; that the plaintiff had only two steps to take to
clear the track, and that it was supposed that he would do
so, and the speed of the car was slackened in consequence.
It is plain, therefore, that by the use of the utmost dili-
gence on the part of defendant the accident might probably
have been avoided.   To this utmost diligence the defendant
was not under the circumstances bound; and in the whole
testimony we can see no evidence of recklessness or want
of ordinary care on the part of defendant's driver.   It is
not at all a question of the weight of evidence.   We are
not balancing contradictory statements at all.   But, care-
fully searching the record for evidence of want of ordinary
care on the part of defendant, in order that we may uphold

this verdict, we are unable to find any want of ordinary care directly contributory to or causing the injury; and under these circumstances we feel it to be our duty to reverse the case.

It is not to be disputed that there was evidence of some want of care on the part of defendant. To go fast past the crossing, contrary to general instructions in that regard from the company, was a careless act on the part of the driver; but it was not the cause of the injury. The Jefferson Avenue crossing was about sixty feet from the point of collision, and had plaintiff been on the track when that crossing was reached, the driver, even if his mule was at a gallop, might well suppose, without any careless disregard of plaintiff's safety, that he would be off the track before he was reached. Three short steps will take a man entirely across the track, which is only five feet between the rails, and a driver is not bound, in the exercise of merely ordinary care, to check his horse because a man sixty feet off is seen on the track directly in front of him; nor is he bound to foresee the possibility that a man walking towards the track will attempt to cross it immediately in front of an approaching car driven at a gallop. A driver is not bound to regulate his speed at such a rate as may be necessary to avoid harm to persons crossing the road in an unreasonable and improper manner. It is as much the duty of persons crossing a street on foot to look out for vehicles as it is the duty of the driver to look out for those crossing the street. There must in such a case be positive evidence of well-defined negligence on the part of the driver : some evidence of some negligence will not do.

The case at bar is in many respects like that of *Cotton* v. *Wood* (decided in England in 1861), 8 C. B. 568 ; 7 Jur. (N. s.) 168. In that case an omnibus was being driven at five or six miles an hour along a crowded thoroughfare in London, on a stormy, snowy night in November, at about

ten o'clock. A woman and child set out slowly to cross the road, and were run over by the omnibus. There was as much time for them to get out of the way as there was for the driver to pull up ; and had they stepped forward with alacrity, they would have escaped : but they hesitated and stepped backward, and were run over. The driver might have seen them, because a passenger saw them, but the driver happened at the moment to be looking back. The judge at *nisi prius* was of opinion that there was no evidence to go to a jury, but took a verdict to avoid a new trial ; and a rule having been obtained to show cause why a nonsuit should not be entered, was made absolute after argument in the Common Pleas. The court say that it might as well be said that the persons injured negligently ran against the omnibus, as that the omnibus horses negligently ran against them. *William* v. *Richards*, 3 Car. & Kir. 8 ; *Cornman* v. *Eastern Counties R. Co.*, 5 Jur. (N. s.) 657.

We do not render a judgment for defendant, but reverse the cause, because the evidence as presented by the record is in some points, and especially as to the speed at which the car was moving, not so definite as perhaps it might be made on a new trial. Whilst plaintiff's witnesses speak of "full speed" and of the mule galloping, they do not say, or intimate, that the car was going at a speed unusual or which we can see to be improper in street-cars, or make any estimate whatever of its speed. It does not appear why the driver of the car was not examined on either side.

With the concurrence of all the judges the judgment is reversed and the cause remanded.