[No. 660.   Decided March 9, 1893.

MIKE CHRISTENSEN, *Respondent*, v. UNION TRUNK LINE, *Appellant*.

ELECTRIC RAILWAYS — CONTRIBUTORY NEGLIGENCE — EVIDENCE —
WITNESS FEES.

Where a driver attempts to cross a track in front of a rapidly approaching electric car, knowing of its approach, and his team is struck and injured by the car, he cannot recover for the reason that his own negligence contributed to the injury.

In an action against an electric railway company for negligence it is irrelevant to prove that the motorman had run his car at a high rate of speed on other occasions.

In the absence of proof that a conductor is necessary for the safe management of an electric car, it is error to admit testimony showing that there was no conductor upon a car at the time of an accident.

Proof of the discharge of the motorman after an accident is immaterial in an action against the company for his alleged negligence.

A witness who attends a trial and testifies upon request, without the service of a subpœna upon him, is entitled to compensation.

*Appeal from Superior Court, King County.*

*Smith & Littell*, and *Hawley & Prouty*, for appellant.

*Trusten P. Dyer*, for respondent.

The opinion of the court was delivered by

ANDERS, J.—On October 27, 1891, the appellant was the owner of an electric street car line, and was operating the same on South Fourteenth street, in the city of Seattle. Upon this street, which runs north and south, there is an elevation known as Beacon Hill, from the top of which the railway track descended towards the north on a grade of about ten per cent., according to the evidence.  From the crest of the hill northward, that part of the street that was

usually traveled was on the east side of the street car track. Between Canal and Lane streets, however, or in that vicinity, there had been a washout on the east side of the track, and, while the city was repairing the damage, it had constructed a crossing over the railroad track.to the west side of the track, and a plank road leading north down the track a distance of about one hundred and twenty feet, and then crossing back to the east side of the track. The first, or upper, crossing was about seven hundred feet from the brow of the hill. At the lower end of this temporary roadway, on the west side of the railway track, and close to the lower crossing, there was an excavation on that side of the street some four or five feet deep, so that teams could not be driven further north without crossing back to the east side of the railroad.

About nine o'clock in the forenoon of said October 27th, the respondent, who was a teamster and engaged in hauling cordwood from Beacon Hill, passed down on the east side of the street with a team of horses and a wagon loaded with wood, while one of appellant's cars was also going down the hill in the same direction (north), crossed over to the west side of the track, and thence continued down the temporary roadway to the lower crossing, when the hub of the hind wheel of his wagon was struck by the passing car. As the car passed on, the horse nearest thereto sprang forward with such force that he detached himself from the wagon by breaking the whiffletree and harness. The other horse was thrown down the embankment, and the loaded wagon fell upon him and so injured him that he soon after died. The wagon was somewhat damaged, but whether by the collision or the fall is not certain, though the probabilities are that it was by the latter.

The respondent brought this action to recover damages thus sustained, and which he alleged were caused by the negligence of the appellant in thus running its car against

his wagon. The appellant, by its answer, denied that it was in any manner negligent or careless in the management of its car, and alleged that whatever damage the respondent sustained was caused by his own carelessness and negligence. There was a verdict for the plaintiff, and defendant filed a motion for a new trial. The motion was denied by the court, and judgment was entered upon the verdict, to reverse which the defendant has brought the cause to this court.

It is contended on behalf of the appellant that the judgment must be reversed for the reason that the evidence shows that the injury complained of was not the result of negligence on the part of the motorman in charge of the car, but was caused solely by the want of ordinary prudence and care on the part of respondent. If it be true that the accident would not have occurred but for respondent's own negligence, he has no cause of complaint against appellant, even although the latter may have also been negligent. The fact, if it were a fact, that appellant was running its car at an unusually high rate of speed at the time of the accident, is no excuse for the want of a reasonable measure of care and prudence on the part of the respondent to avoid injury. *Railroad Co. v. Houston*, 95 U. S. 697.

The testimony is too voluminous to be stated fully, but a careful examination of it leads us irresistibly to the conclusion that the judgment cannot be sustained. The respondent's own testimony shows that he had for some time been engaged in hauling wood down South Fourteenth street from Beacon Hill, and was not only familiar with the character and condition of the street and the temporary roadway on the west side of the railroad track, but also with the running of the cars at that particular point. He says he had been over the road a great many times and knew there was danger in going on the temporary roadway if the cars were coming up. He further says that

while coming down the hill he met a car going up, and that he knew at that time that the car coming down and the car going up the hill usually met at the top of the hill.    And yet he states that he did not look for the car until he got to the upper crossing, and did not see it until he was crossing over the track, and did not hear the bell ring until he got into the narrow space on the west side of the track. He also says that the car was then coming down at the rate, as he afterwards ''figured out,'' of from sixteen to twenty miles an hour.    He proceeded down the temporary passage way to the lower crossing and undertook to cross back to the east side of the track, in front of the approaching car, thinking he could do so ''all right,'' but finding he had not time, he ''swung his horses to the west.''    This movement of his team brought the back end of the wagon nearest the railway, and the dash-board of the car, in passing, struck the hub of the hind wheel, as before stated. The respondent testified further that the car was so near him when he turned his horses that it almost instantly came in contact with his wagon.    The testimony of other witnesses also shows that the respondent attempted to cross the track ahead of the car, but apparently changed his mind and ''pulled'' his horses back and away from the railroad.

There is no doubt, therefore, as to what the respondent did at and immediately prior to the accident.    And we think that it was his own want of that reasonable care and watchfulness which the occasion demanded, that brought about the injury of which he complains.    In the first place, it was negligence on the part of respondent to cross from the east side of the track to the narrow passage on the west without looking for the approach of the car which he knew was about to pass down the hill, if, in fact, as he claims, it was a dangerous place.    And it was still more negligent for him to undertake to cross back when the car was so

near him. His excuse for so doing is that the way was too narrow for the car to pass his wagon, and that it was therefore the duty of the person in charge either to stop the car or go at such a rate of speed as would have permitted him to pass over the track to a place of safety.

It was undoubtedly the duty of the motorman in charge of the car to use all reasonable precautions to prevent injury to the respondent, but it was not negligence on his part not to anticipate that the respondent, who was traveling on the public highway, in the same direction, and by the side of the railway track, would suddenly undertake to cross the track in front of the car. He had a right to presume that the respondent would remain off the track and not knowingly place himself, or his property, in imminent danger. And he was not bound to regulate his speed at such a rate as would certainly avoid injury to any one who might attempt to cross the road in an unreasonable and improper manner. *Meyer v. Lindell Ry. Co.*, 6 Mo. App. 27.

The evidence as a whole clearly shows that the traveled way on the west side of the street was, at all points, of sufficient width to permit the cars to pass wagons or other ordinary vehicles that might be there, and that the lower crossing was the widest part thereof. This was shown by the testimony of the man who constructed it for the city, by measurements of respondent's wagon and the width of the plank on the day on which the accident occurred, and by actual tests on the same day. On that afternoon, Mr. Atwood, who was then driving up the street in a wagon of the same width of track as that of respondent, and with hubs but one inch shorter, stopped at the narrowest portion of the planking and got off his wagon as one of appellant's cars was passing, so as to be able to observe how close it would go to the wagon; and he testified that the car was not nearer than nine or ten inches from the wagon.

One other witness testified that he had driven along the same road when the street cars were passing up and down without difficulty. And both the motorman who was running the car when the accident happened and a former conductor testified that they had frequently passed teams at that place with the cars — the latter stating that he had seen the cars pass both lumber and wood wagons between the upper and lower crossings.

It will therefore be seen that if the respondent had stopped when he saw the car approaching the crossing, and waited, as the motorman says he thought he would do, until it had passed, no collision would have occurred and no damage would have been done. The discrepancy between the testimony of the respondent and some of his witnesses and that of the witnesses just mentioned as to the width of the road at the place of the accident, can be readily accounted for by the fact that the railway company, after the accident, moved the track some eighteen inches farther to the west, and that the distance from it to the sidewalk at the time of the trial was taken as the width of the traveled way at the time of the accident.

It is claimed by the learned counsel for the respondent, that notwithstanding the fact that the respondent may have been guilty of negligence in attempting to cross the track, the appellant was not justified in running him down. And we have no doubt of the correctness of that proposition. But we fail to find sufficient evidence in the record to warrant the conclusion that the motorman having the management of the car was derelict in the discharge of any duty he owed to the respondent. He rang the bell violently from the time he discovered the respondent on the east side of the track until he reached the lower crossing, and when he saw that the respondent was about to cross the track in front of him, and that he would be unable to stop the car in time to prevent a collision in case he did cross, he "hallooed"

"look out" so loudly that he was heard by persons who were at a considerable distance down the street. There was a brake at each end of the car, and both of them were in good condition and firmly set. In short, as was said by one of the witnesses who was a passenger in the car at the time, he did everything he could do to stop the car and to prevent injury to the respondent. Indeed, it appears by undisputed testimony that the respondent himself stated soon after the collision occurred, that the motorman tried hard to stop the car and was not to blame for failing to do so. He then made no claim for damages on account of any mismanagement of the car, but did claim that the appellant was responsible for having, as he then supposed, built this narrow roadway and left open the excavation into which he fell at the lower end thereof. It was not until he learned that the city, if anybody, was responsible for the condition of the street, that he made any complaint as to the speed of the car.

The rights and duties of street railway companies, and persons using the streets of cities in the ordinary way, are very clearly and tersely defined in the late case of *Carson v. Federal St. & P. V. P. Ry. Co.*, 147 Pa. St. 219 (23 Atl. Rep. 369), in which the supreme court of Pennsylvania said:

"Greater and better facilities and a higher rate of speed are being constantly demanded. The movment of cars by cable or electricity along crowded streets is attended with danger, and renders a higher measure of care necessary, both on the part of the street railways and those using the streets in the ordinary manner. It is the duty of the railways to be watchful and attentive, and to use all reasonable precautions to give notice of their approach to crossings and places of danger. Its failure to exercise the care which the rate of speed and the condition of the street demand, is negligence. On the other hand, new appliances, rendered necessary by the advance in business and population in a given city, impose new duties on the public. The

street railway company has a right to the use of its track, subject to the right of crossing by the public at street intersections; and one approaching such a place of crossing must take notice of it, and exercise a reasonable measure of care to avoid contact with a moving car. It may not be necessary to stop on approaching such a crossing, for the rate of speed of the most rapid of these surface cars is ordinarily from six to nine miles per hour; but it is necessary to look before driving upon the track. If, by looking, the plaintiff could have seen and so avoided an approaching train, and this appears from his own evidence, he may be properly non-suited. . . . Orr testifies that he knew the crossing; that he listened for the sound of a gong, but, not hearing it, drove on the track and was instantly struck. He drove in front of a moving car so near to him as to make a collision inevitable. If he had looked he could have seen the car and stopped, and the accident would have been avoided. Not to do so was, in the language of *R. R. Co. v. Bell*, 'gross negligence,' and justly defeats the action brought to recover from another damages that were self-inflicted. It is the duty of one about to cross a street railway track to look, so that he may not walk directly in front of a moving car, to be struck by it.''

In that case the plaintiff's employé, without stopping or listening, drove directly upon defendant's tracks and then looked up and saw the car so near to him that there was no escape. In the case at bar the plaintiff both saw and heard the approaching car and yet attempted to cross the track. His experiment failed and he alone must bear the consequences of his miscalculation.

In view of the fact that there must be a new trial of this cause, we will next consider some of the alleged errors in reference to the admission of testimony over the objections of appellant. It is contended that the court erred in permitting the plaintiff to show that this particular motorman had run his car at a high rate of speed upon other occasions, and we think the court did err in so doing. It was a fact collateral and irrelevant to the issue, and one

which the defendant could not be expected to be prepared to rebut without previous notice. 1 Greenl., Ev., § 52.

And, in view of the fact that there was no testimony showing that a conductor was requisite or necessary in order for the safe running and management of the car, we think it was error to admit testimony to show that there was no conductor upon this particular car at the time of the accident. If a conductor was necessary to the proper management of the car, that fact should have been shown, and if unnecessary, then the fact that there was none was immaterial, and should have been excluded from the jury.

We are also of the opinion that the court should not have permitted the respondent to show that the car driver was discharged by appellant soon after the accident occurred, but inasmuch as it was also shown that it was the rule of the company to discharge all motormen who met with accidents under any circumstances, we think the ruling was not sufficiently prejudicial to entitle the appellant to a reversal of the judgment on that ground.

There was no error in the court's refusing to grant, in its entirety, appellant's motion to re-tax the costs in this case. We are unable to see why a witness who attends a trial and testifies therein without the service of a subpœna upon him, is not justly entitled to compensation therefor; nor can we perceive "how any party can be injured in having to pay mileage and attendance merely for the witnesses of an adversary who attends upon request or agreement, when the additional expense of officer's fees and mileage for issuing and serving of a subpœna, swelling largely the claim for disbursements, could do no more than to procure the attendance of the witness." *Crawford v. Abraham*, 2 Or. 166. See also *Wheeler v. Lozee*, 12 How. Pr. 448; *Farmer v. Storer*, 11 Pick. 241.

It is not necessary to discuss the remaining objections of appellant, as they may not arise on another trial.

The judgment of the lower court is reversed, and the cause remanded for a new trial.

STILES, SCOTT and HOYT, JJ., concur.

DUNBAR, C. J. (*dissenting*).—I think the whole record in this case shows that the motorman was running his car in a reckless and unwarranted manner, and that the plaintiff was not guilty of any contributory negligence. The judgment should be affirmed.