[No. 3399.   Decided April 4, 1900.]

JOHN HELBER, *Appellant,* v. SPOKANE STREET RAILWAY
COMPANY, *Respondent.*

22   319
d27  240
22   319
37   504
f38  325

STREET RAILWAYS — ACCIDENT AT CROSSING — CONTRIBUTORY NEGLI-
GENCE.

Where one driving a team and seated in a covered wagon
from which he could not see without putting his head out ap-
proaches a car track upon which he knows an electric car is
about due, and, when near the track, slows down his team from a
rapid pace and attempts to cross the track without looking for
the car, but having his attention fixed on another object, his own
negligence is the proximate cause of any injury sustained by rea-
son of a collision between his wagon and the car.

Appeal from Superior Court, Spokane County. — Hon.
ABRAHAM L. MILLER, Judge.   Affirmed.

*Hand, Taylor & Graves,* for appellant.
*Stephens & Bunn,* for respondent.

The opinion of the court was delivered by

DUNBAR, J. — This is an action brought by the appellant
against the respondent, the Spokane Street Railway Com-
pany, to secure damages for injuries alleged to have been
sustained by reason of a collision between his wagon, in
which he was sitting and driving his team, and a street car
owned and operated by respondent in the city of Spokane.
The complaint is the ordinary complaint in such cases.
The answer tenders the issue of contributory negligence.
At the close of plaintiff's testimony the defendant chal-
lenged the sufficiency of plaintiff's evidence and asked for
judgment.  The motion was sustained.  The case was taken
from the jury, and judgment for costs against the plaintiff
was given by the court.   From such judgment this appeal
is prosecuted.

The only questions presented for our consideration are: Did the testimony of the plaintiff, conceding it to be true, show that, as a matter of law, the plaintiff was guilty of contributory negligence? And if so, was such negligence the proximate cause of his injury? A careful consideration of the whole testimony convinces us that both questions must be answered in the affirmative. Sprague street, in the city of Spokane, runs east and west. Pine street runs north and south, reaching the south line of Sprague street, and terminating there. It was on Sprague street, about twenty-three feet north of the termination of Pine street, that the accident occurred. The plaintiff was a milkman, driving a milk wagon, and was coming down Pine street from the south, and attempting to cross Sprague street to reach a point where there was a water trough and water tank. He testified that when about forty feet from the south line of Sprague street he looked east for a car, and did not see any coming; that he could have seen a car for the distance of a block from where he looked, but that, not seeing one, he thought that he would have plenty of time to make the crossing, and did not look any more; that at the time he was driving in a fast trot, at the rate of about eight miles an hour, but just before reaching the street he brought his horses down to a slow walk, at the rate of about a mile and a half per hour; that he was in a covered milk wagon, and could not see without putting his head out, and that he did not put his head out again until he heard some one yelling, a second before the collision. The testimony shows that the car was approaching at the rate of from twelve to fourteen miles per hour. This was about seven o'clock in the morning, and the plaintiff testified that he was acquainted with the road, and knew that a car was due about that time. He testified on cross-examination that his wagon was moving very slowly when it was struck;

that the horses were in a slow walk, and that his attention was fixed on the watering place across the street; that, if he had looked when he got to Sprague street, there was nothing to prevent him from seeing the car coming, and that he had plenty of time; if he had looked after he reached Sprague street, and had seen the car coming, to have stopped his team without driving on the track; and that he drove on the track utterly regardless of whether a car was coming or not. This is the substance of the pertinent testimony, and it is contended by the appellant that it was as much the duty of the defendant to see the plaintiff and protect him from a collision as it was the duty of the plaintiff to see the car and avoid a collision. But, conceding for the purposes of this case that the duties were equal, the testimony shows that the plaintiff was approaching at a rapid rate of speed and the motorman would have been justified in concluding that such rate of speed would be maintained at least until the crossing was accomplished, and that, if it was so maintained, the wagon would be clear of the track before the car would reach the crossing, as would no doubt have been the case, as it eventuated that, even with the retarded movement, the wagon was nearly out of the way when the car reached the crossing. But the undisputed testimony shows that when the plaintiff reached the crossing he slowed the team down, and drove across the street and the track in a slow walk. In fact, one of his witnesses testified that the horses were standing still when the car struck the wagon. In any event, it is evident that he was dallying on the track with his attention absorbed by the condition of things he described around the watering place. So it can readily be seen that such an abrupt change in the speed of the team might, and probably did, mislead the motorman, and that by the time he

had noted the changed conditions it was too late to stop
the car in time to avert the accident, although the testi-
mony shows that he was attempting to do so.    While it is
true, as this and many other courts have frequently said,
that street cars have not an absolute right of way through
the streets, and that pedestrians and others have an equal
right to travel on or across any street, yet this latter right
must be exercised reasonably, and is qualified by the fact
that cars run on fixed tracks, and, in the nature of things,
cannot accommodate themselves as readily to emergencies,
and cannot even stop with the same promptness or facility,
as can pedestrians or drivers of free vehicles, who can
instantly stop, or turn to right or left, and avoid a collision
with an advancing car.    The universal knowledge of this
fact has established a custom, which ought in justice to
have the force of law, making it the duty of the party who
can more easily and readily adjust himself to the exigen-
cies of the case to do so, and to stop or turn to avoid a
collision; and the motorman has the right to presume that
such duty will be performed.    Of course, if he discovers,
or ought, as a prudent person, to discover, that it will not
be performed, his duty is to stop in any event; otherwise,
he will subject himself and his company to the charge of
wilful negligence.    But there is nothing in this case tend-
ing to show wilful negligence on the part of the company,
nor is there any allegation of that character in the com-
plaint.    Much testimony was introduced in relation to the
time it would take to stop a car running at the rate of speed
proven in this case, but, in view of what we have said
before, we do not think the testimony material.

Many quotations from the opinions of this and other
courts in relation to the duties of street cars are presented
in appellant's brief, and it is claimed that, if the logic of
such opinions be followed, it must result in the reversal of

the judgment in this case.  But announcements by courts of the character quoted are valuable only when construed in connection with and in reference to the circumstances surrounding the particular cases under consideration by the courts making them, and we do not believe that any court has sustained, or ought to sustain, a judgment based on such testimony as is presented in this record; for, while extraordinary mental alertness is not commanded by the law, common prudence is, and it seems to us that a degree of prudence less than common would have restrained a man from driving on to a track under the circumstances testified to by the plaintiff.

In our opinion, the learned judge who tried the case rightly determined that the negligent act of the plaintiff was the proximate cause of the injury.  The consideration of the cause was properly taken from the jury.  Judgment affirmed.

GORDON, C. J., and FULLERTON and REAVIS, JJ., concur.

ANDERS, J., not sitting.