[No. 5410.  Decided March 15, 1905.]

ALICE O. WOOLF, *Respondent, v.* WASHINGTON RAILWAY
& NAVIGATION COMPANY, *Appellant.*[1]

RAILROADS—NEGLIGENCE—CROSSINGS—TRAVELER FAILING TO LOOK
AND LISTEN—CONTRIBUTORY NEGLIGENCE—NONSUIT.   A traveler
who drives a team upon a railroad crossing at a point where for
a considerable distance he had an unobstructed view of an ap-
proaching locomotive, is guilty of contributory negligence, as a
matter of law, where he drove on to the crossing either without
looking or looked and whipped up his horses in an endeavor to
cross ahead of the engine.

SAME—EVIDENCE—PRESUMPTION AS TO DUE CARE.   The pre-
sumption that a traveler used due care and stopped to look and
listen before driving upon a railroad crossing, cannot be in-
dulged where it appears from the testimony that for a consider-
able distance he had an unobstructed view of an approaching
locomotive, but drove at a slow walk until within fifty feet or
less of the crossing, and suddenly whipped up his horses in an
endeavor to cross ahead of the engine.

SAME—DOCTRINE OF "LAST CLEAR CHANCE."   The doctrine that
the defendant had the "last clear chance" to avoid killing a
traveler, who was struck by a locomotive at a railroad crossing,
has no application where the deceased was driving at a slow
walk until within fifty feet of the crossing and suddenly whipped
up his horses in an endeavor to cross ahead of a locomotive
moving at a rate of between 12 and 60 miles an hour.

SAME—COMPARATIVE NEGLIGENCE.   The doctrine of comparative
negligence does not obtain in this state.

SAME—TRIAL—SETTING ASIDE VERDICT NOT SUSTAINED BY EVI-
DENCE—CONTRIBUTORY NEGLIGENCE.   The verdict of a jury upon
an issue as to contributory negligence which is contrary to what
all reasonable men ought to find upon the undisputed testimony,
is not conclusive upon the court, and will be set aside upon appeal.

Appeal from a judgment of the superior court for Clarke
county, Miller, J., entered March 23, 1904, upon the ver-
dict of a jury for damages for the death of plaintiff's hus-
band killed at a railroad crossing.   Reversed.

1Reported in 79 Pac. 997.

*B. S. Grosscup, James F. McElroy,* and *A. G. Avery,* for appellant, contended, among other things, that a traveler approaching a railroad crossing must look and listen, and at a time when, and place where, it will be effective. *Schofield v. Chicago etc. R. Co.,* 114 U. S. 615; *Texas & Pac. R. Co. v. Gentry,* 103 U. S. 353, 366; *Elliott v. Chicago etc. R. Co.,* 150 U. S. 245, 14 Sup. Ct. 85; *Ladouceur v. Northern Pac. R. Co.,* 4 Wash. 38, 29 Pac. 942; *Pyle v. Clark,* 79 Fed. 744; *Kelsay v. Missouri Pac. R. Co.,* 129 Mo. 362, 30 S. W. 339; *Hayden v. Missouri etc. R. Co.,* 124 Mo. 566, 28 S. W. 74; *Moore v. Keokuk etc. R. Co.,* 89 Iowa 223, 56 N. W. 430; *Cleveland etc. R. Co. v. Elliott,* 28 Ohio St. 340; *Pennsylvania R. Co. v. Beale,* 73 Pa. St. 504, 13 Am. Rep. 753; *Brown v. Milwaukee R. Co.,* 22 Minn. 165; *Abbett v. Chicago etc. R. Co.,* 30 Minn. 482, 16 N. W. 266; *Haas v. Grand Rapids etc. R. Co.,* 47 Mich. 401, 11 N. W. 216; *Brady v. Toledo etc. R. Co.,* 81 Mich. 616, 45 N. W. 1110; *Nelson v. Duluth etc. R. Co.,* 88 Wis. 392, 60 N. W. 703; *Blackburn v. Southern Pac. R. Co.,* 34 Ore. 215, 55 Pac. 225; *Salter v. Utica etc. R. Co.,* 75 N. Y. 273; *Schaefert v. Chicago etc. R. Co.,* 62 Iowa 624, 17 N. W. 893; *Cincinnati etc. R. Co. v. Duncan,* 143 Ind. 524, 42 N. E. 37; *Philadelphia etc. R. Co. v. Hogeland,* 66 Md. 149, 7 Atl. 105, 59 Am. Rep. 159; *Tully v. Fitchburg R. Co.,* 134 Mass. 499; *Butterfield v. Western R. Corp.,* 10 Allen 532, 87 Am. Dec. 678; *Tolman v. Syracuse etc. R. Co.,* 98 N. Y. 198, 50 Am. Rep. 649; *Powell v. New York etc. R. Co.,* 109 N. Y. 613, 15 N. E. 891; *Weyl v. Chicago etc. R. Co.,* 40 Minn. 350, 42 N. W. 24; *Smith v. Maine Cent. R. Co.,* 87 Me. 339, 32 Atl. 967; *Schlimgen v. Chicago etc. R. Co.,* 90 Wis. 186, 62 N. W. 1045; *Owens v. Pennsylvania R. Co.,* 41 Fed. 187; *Snider v. New Orleans etc. R. Co.,* 48 La. Ann. 1, 18 South. 695. His duty is definitely fixed by law.

Holmes, The Common Law, pp. 111, 112; Shearman &
Red., Negligence, § 476; Beach, Contributory Neg., §§ 181,
182, 452; 3 Elliott, Railroads, §§ 1166-1179.    And
where there is an omission of that duty the court should
direct a verdict.    3 Elliott, Railroads, § 1179; *Blount v.
Grand Trunk R. Co.*, 61 Fed. 375; *Christensen v. Union
Trunk Line*, 6 Wash. 78, 32 Pac. 1018; 2 Shearman &
Red., Negligence, § 476; *Myers v. Baltimore etc. R. Co.*,
150 Pa. St. 386, 24 Atl. 747.    If the deceased could have
seen the engine had he looked, the presumption is that he
did not look, or looking, did not heed, and in either case
he is guilty of contributory negligence.    *Huelsch v. Chi-
cago etc. R. Co.*, 87 Wis. 304, 58 N. W. 393; *Railroad Co.
v. Houston*, 95 U. S. 697; *Gilbert v. Erie R. Co.*. 97 Fed.
747; Beach, Contributory Neg., § 182; *Artz v. Chicago etc.
R. Co.*, 34 Iowa 153; *Wilcox v. Rome etc. R. Co.*, 39 N.
Y. 358, 100 Am. Dec. 440; *Kwiotkowski v. Grand Trunk
R. Co.*, 70 Mich. 549, 39 N. W. 463; *Indiana etc. R. Co.
v. Hammock*, 113 Ind. 1, 14 N. E. 737; *Northern Pac. R.
Co. v. Freeman*, 174 U. S. 379.    Upon the subject of the
presumption that plaintiff exercised due care, the suffi-
ciency of evidence to rebut such presumption is a question
for the court.    *Menominee River etc. Co. v. Milwaukee
etc. R. Co.*, 91 Wis. 447, 65 N. W. 176; *Spaulding v.
Chicago etc. R. Co.*, 33 Wis. 582; *Smith v. Northern Pac.
R. Co.*, 3 N. D. 17, 53 N. W. 173.    The effect of the pre-
sumption is merely to shift the burden of proceeding; it is
not part of the case and is neither argument nor evidence.
McKelvey, Evidence, p. 62; Thayer, Preliminary Treatise
on Evidence, pp. 314, 351, 551, 553; 1 Greenleaf, Evidence
(16th ed.), pp. 93, 102, 127, 128; Thayer, Cases on Evi-
dence (2d ed.), p. 44; *Chase v. Maine Cent. R Co.*, 77 Me.
62, 52 Am. Rep. 744; *Lisbon v. Lyman*, 49 N. H. 553. The
presumption of due care cannot obtain where there is evi-

dence to the contrary. *Dewald v. Kansas City etc. R. Co.,* 44 Kan. 586, 24 Pac. 1101; *Baker v. Chicago etc. R. Co.,* 95 Iowa 163, 63 N. W. 667; *Salyers v. Monroe,* 104 Iowa 74, 73 N. W. 606; *Myers v. City of Kansas,* 108 Mo. 480, 18 S. W. 914; *St. Louis etc. R. Co. v. Whittle,* 74 Fed. 296; *Moberly v. Kansas City etc. R. Co.,* 98 Mo. 183, 11 S. W. 569; *Morton v. Heidorn,* 135 Mo. 608, 37 S. W. 504; *Waldron v. Boston etc. R. Co.,* 71 N. H. 362, 52 Atl. 443; *Glascock v. Central Pac. R. Co.,* 73 Cal. 137, 14 Pac. 518; *Mynning v. Detroit etc. R. Co.,* 64 Mich. 93, 31 N. W. 147, 8 Am. St. 804; *Buesching v. St. Louis Gaslight Co.,* 73 Mo. 219, 39 Am. Rep. 503; *Reading etc. R. Co. v. Ritchie,* 102 Pa. St. 425.

*Rands & Hopkins* and *Bennett & Sinnott,* for respondent. Contributory negligence is a question for the jury. *Burian v. Seattle Electric Co.,* 26 Wash. 606, 67 Pac. 214; *Traver v. Spokane St. R. Co.,* 25 Wash. 225, 65 Pac. 284; *Steele v. Northern Pac. R. Co.,* 21 Wash. 287, 57 Pac. 820. The burden of proof is on the defendant. *Randall v. Hoquiam,* 30 Wash. 435, 70 Pac. 1111; *Gallagher v. Town of Buckley,* 31 Wash. 380, 72 Pac. 79. And the credibility of the witnesses is involved, and should be passed upon by the jury. 1 Thompson, Negligence (New ed.), § 434; *Petrie v. Columbia etc. R. Co.,* 29 S. C. 303, 7 S. E. 515; *Downey v. Pittsburg etc. Traction Co.,* 161 Pa. St. 131, 28 Atl. 1019; *Kinard v. Columbia etc. R. Co.,* 39 S. C. 514, 18 S. E. 119. A person killed at a railroad crossing is presumed to have looked and listened and to have used due care. *Dalton v. Chicago etc. R. Co.,* 104 Iowa 26, 73 N. W. 349; *Baltimore etc. R. Co. v. Landrigan,* 191 U. S. 461, 48 L. Ed. 262; *Northern Pac. R. Co. v. Spike,* 121 Fed. 44; *McGhee v. White,* 66 Fed. 502; *Weller v. Chicago etc. R. Co.,* 164 Mo. 180, 64 S. W. 141, 86 Am. St. 592; *Schum v. Pennsylvania R. Co.,* 107 Pa. St. 8;

*Cleveland etc. R. Co. v. Crawford,* 24 Ohio St. 631; *Continental Imp. Co. v. Stead,* 5 Otto 161, 24 L. Ed. 403; *Baltimore etc. R. Co. v. Griffith,* 159 U. S. 603, 40 L. Ed. 274; *McBride v. Northern Pac. R. Co.,* 19 Ore. 64, 23 Pac. 814.    *Steele v. Northern Pac. R. Co.,* 21 Wash. 287, 57 Pac. 820.    This presumption stands in the place of positive evidence and may overcome direct testimony to the contrary.    *Weller v. Chicago etc. R. Co., supra; Chaperon v. Portland Elec. Co.,* 41 Ore. 39, 67 Pac. 928; *Boyd v. Portland Elec. Co.,* 40 Ore. 126, 66 Pac. 576; *Kinard v. Columbia etc. R. Co.,* 39 S. C. 514, 18 S. E. 119; *Stone v. Boston etc. R. Co.,* 72 N. H. 206, 55 Atl. 359.    The rule that the traveler must look and listen, is not an arbitrary rule of law to be applied to every case.    *Chicago etc. R. Co. v. Hansen,* 166 Ill. 623, 46 N. E. 1071; *Galveston etc. R. Co. v. Harris,* 22 Tex. Civ. App. 16, 53 S. W. 599; *Davis v. Concord etc. R. Co.,* 68 N. H. 247, 44 Atl. 388.    The court cannot fix the place at which the traveler shall look; it is a question for the jury.    *Hecker v. Oregon R. Co.,* 40 Ore. 6, 66 Pac. 270; *Warren v. Southern Pac. R. Co.* (Cal.), 67 Pac. 1; *Winey v. Chicago etc. R. Co.,* 92 Iowa 622, 61 N. W. 218; *Cummings v. Chicago etc. R. Co.,* 114 Iowa 85, 86 N. W. 40; *Hicks v. New York etc. R. Co.,* 164 Mass. 424, 41 N. E. 721, 49 Am. St. 471; *Louisville etc. R. Co. v. Cooper,* 23 Ky. Law 1658, 65 S. W. 795; *Defrieze v. Illinois Cent. R. Co.* (Iowa), 94 N. W. 505; *Cookson v. Pittsburg etc. R. Co.,* 179 Pa. St. 184, 36 Atl. 194; *Green v. Los Angeles Terminal R. Co.* (Cal.), 69 Pac. 694; *Smith v. Baltimore etc. R. Co.,* 158 Pa. St. 82, 27 Atl. 847; *Moore v. Chicago etc. R. Co.,* 102 Iowa 595, 71 N. W. 569; *Piper v. Chicago etc. R. Co.,* 77 Wis. 247, 46 N. W. 165; *Plummer v. Eastern R. Co.,* 73 Me. 591; *Grand Trunk R. Co. v. Ives,* 144 U. S. 408, 12 Sup. Ct. 679; *Rodrian v. New York etc. R. Co.,* 125 N.

Y. 526, 26 N. E. 741; *Link v. Philadelphia etc. R. Co.,* 165 Pa. St. 75, 30 Atl. 820, 822; *Ely v. Pittsburgh etc. R. Co.,* 158 Pa. St. 233, 27 Atl. 970; *Chaffee v. Boston etc. R. Co.,* 104 Mass. 108; *Henavie v. New York etc. R. Co.,* 166 N. Y. 280, 59 N. E. 901; *Cleveland etc. R. Co. v. Harrington,* 131 Ind. 426, 30 N. E. 37. It is not always, as a matter of law, negligence to attempt to cross a railroad track in front of a train. *Chicago etc. R. Co. v. Miller,* 46 Mich. 532, 9 N. W. 841; *Robbins v. Fitchburg etc. R. Co.,* 161 Mass. 145, 36 N. E. 752; *Chicago etc. R. Co. v. Corson,* 198 Ill. 98, 64 N. E. 739; *Grand Rapids etc. R. Co. v. Cox,* 8 Ind. App. 29, 35 N. E. 183; *Newman v. Delaware etc. R. Co.,* 20 Pa. St. 530, 53 Atl. 345; *Haines v. Lake Shore etc. R. Co.,* 129 Mich. 475, 89 N. W. 349; 2 Thompson, Negligence (New ed.), §§ 1669, 1624.

Root, J.—Respondent's husband, while crossing appellant's railway track, upon a public highway near Vancouver, Washington, was struck by a locomotive and killed. This action was brought for damages, and resulted in a verdict and judgment of $17,500, in favor of respondent. From said judgment, appeal is taken to this court.

The most important errors assigned turn upon the question of the sufficiency of the evidence to sustain the verdict and judgment. The material facts were substantially as follows: Deceased was riding in an ordinary farm wagon, driving a team of horses from Vancouver along the county road toward his home. About a quarter of a mile south of where the accident occurred, the county road crosses the railroad, and, at a point about two hundred feet west of the track, makes a right angle, and then runs directly north. The railroad track, from the crossing just mentioned, runs in a northerly direction, bearing a little to the west, to a point where it is again crossed by the county road—this crossing being known as "Shaw's crossing," and the cross-

ing above mentioned being known as "Porter's crossing."
For a considerable distance north of Porter's crossing, the
public highway and railroad run almost parallel, and
about two hundred feet apart, but gradually converge,
forming an acute angle at Shaw's crossing.   For a consid-
erable distance between the two crossings, there was an
orchard, which partially obstructed the view of the rail-
way track from the county road, but the north end of said
orchard was a distance of four hundred and seventy-five
feet south of Shaw's crossing.   In this space there were
no trees between the county road and the railway track,
although along part of this distance the railway ran through
a "cut" with an embankment between seven and eight feet
high, which, however, gradually decreased in the di-
rection of Shaw's crossing, until, at the crossing, it disap-
peared entirely.

Deceased crossed the railroad at Porter's crossing, made
the turn on the west side of the track, drove along the high-
way past the orchard, and was in the act of driving across
the railway track at Shaw's crossing, when a locomotive,
coming from the same direction as he, collided with his
wagon and caused his death.   Various diagrams, plats, and
photographs were introduced in evidence, showing the lo-
cation and condition of the railway and county road, and
the contour of the ground in that vicinity.   It appears be-
yond question, and is practically conceded, that, if the de-
ceased, at any point within twenty-five feet of Shaw's
crossing, had looked along the track toward the engine, he
could readily have seen for a distance of from a quarter
to a half mile.   The established and conceded physical con-
ditions show that, at any point between fifty and one
hundred feet, a person could see along the track for a dis-
tance of six hundred feet or more; and, as one approached
the crossing, he could see much further.   At any point

32-37 wash.

on the highway between one hundred and four hundred and seventy-five feet of the crossing, an engine could be seen at any place on the track for a distance of from four hundred and seventy-five to six or eight hundred feet from the crossing.

The accident occurred in the day time. The deceased had lived in that neighborhood four years or more, and was thoroughly familiar with the crossing, and the conditions surrounding the same. He was a man thirty-three years old, and possessed of good eye-sight and hearing. The evidence as to where he was, when he first saw the approaching engine, is somewhat conflicting. One witness says he was about fifty feet "more or less," from the crossing, driving at a slow walk, when he looked toward the engine, and immediately commenced to whip his horses with the lines, in an effort to cross ahead of the locomotive; others said that he was just about to the track, or crossing the same, and driving at a walk, when he looked and saw the engine, and commenced to whip his horses. There was no evidence of his looking at any other point or at any other time prior to those just mentioned. There is no evidence that he stopped to "look and listen."

The evidence as to the speed of the locomotive varied greatly, the estimates of the speed ranging from twelve to sixty miles per hour. There was a conflict in the evidence as to whether or not the whistle was sounded or the bell rung, and as to when and where.

At the close of plaintiff's case, appellant challenged the sufficiency of the evidence, and moved for an order of the court withdrawing the case from the jury, and dismissing the action. The trial court overruled this motion, to which ruling an exception was taken. At the close of all of the evidence, appellant again challenged its sufficiency, and moved to withdraw the case from the jury, and for a judg-

ment of dismissal.   This motion was also denied, and exception taken.   The jury having returned a verdict in favor of respondent in the amount above mentioned, a motion for new trial was interposed, but denied by the court.

We do not think this verdict and judgment can be sustained by the evidence.   It is shown conclusively that the deceased, for a considerable distance before crossing the railway track, could at any point, by looking, have seen the approach of the locomotive.   It thus follows that either he did not look, or else he did look and attempted to make the crossing ahead of the engine.   In either case, he would be clearly guilty of contributory negligence.   The trial court, among other instructions, gave the following:

"If you find from the evidence in the case that the deceased, before he reached the crossing, failed to look in the direction from which the engine was approaching and drove upon the crossing, then he was guilty of contributory negligence and you must return a verdict in favor of the defendant.   If you find from the evidence in the case that the deceased observed the engine approaching and still endeavored to cross the track and was killed thereby, then I instruct you that his conduct was contributory neglect in the premises and your verdict should be for the defendant. If the deceased looked and saw the engine and endeavoring to beat the engine across the crossing, he was struck, he would be guilty of contributory neglect and cannot recover in this action."

In the light of these instructions, it is inconceivable how the jury could return a verdict for plaintiff, except upon the theory of an absolute disregard both of the evidence and the instructions.   The doctrine of "look and listen" is well established, and is applicable to the facts in this case. In the case of *Railroad Co. v. Houston,* 95 U. S. 697, 24 L. Ed. 542, the supreme court of the United States said:

".   .   .   the failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the

deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employees in these particulars was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed to both hear and see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant."

The same court, in the case of *Northern Pac. R. Co. v. Freeman,* 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014, employs this language:

"If in this case we were to discard the evidence of the three witnesses entirely, there would still remain the facts t' at the deceased approached a railway crossing well known to him; that the train was in full view; that, if he had used his senses, he could not have failed to see it; and that, notwithstanding this, the accident occurred. Judging from the common experience of men, there can be but one plausible solution of the problem how the collision occurred; he did not look, or, if he looked, he did not heed the warning, and took the chance of crossing the track before the train could reach him. In either case he was clearly guilty of contributory negligence."

In the case of *Ladouceur v. Northern Pac. R. Co.,* 4 Wash. 38, 29 Pac. 942, this court said:

"While the testimony is uncertain and contradictory in some important particulars, yet as it appears it is a close question whether the plaintiff can escape the charge of contributory negligence. If he could have seen along the track for a long distance while on the level place before go-

ing down the incline he certainly knew it and should have looked, especially as he could not see an approaching train from the southward for any great distance from the crossing while going down the incline, and he must have known this also, as his testimony shows he was entirely familiar with the situation of the track and street in the vicinity. His counsel claims that the plaintiff did look to the southward for a train while on the level space, but we fail to find any testimony to that effect in the record. On the other hand, if he could not have seen along the track but a short distance so there would have been no object in looking while on this level place, he certainly should have stopped and listened before crossing the track, unless the situation was such that he could not have heard a train any material distance therefrom if he had stopped. If there is ever a case where under other ordinary circumstances a man should stop and listen, it would be where he was unable to see the track or an approaching train for more than a very short distance, and had been so unable to see for some time before reaching the crossing."

In 3 Elliott, Railroads, § 1179, that author says:

"Where there is an omission of the duty of the traveler to look and listen before attempting to cross a railroad track the general rule is that it is the duty of the trial court to direct a verdict for the defendant. In such cases the duty of the traveler is definitely fixed by law and there is no question of fact to be submitted to the jury."

In the case of *Christensen v. Union Trunk Line,* 6 Wash. 75, 78, 32 Pac. 1018, 1019, this court said:

"There is no doubt, therefore, as to what the respondent did at and immediately prior to the accident. And we think that it was his own want of that reasonable care and watchfulness which the occasion demanded that brought about the injury of which he complains. In the first place, it was negligence on the part of the respondent to cross from the east side of the track to the narrow passage on the west without looking for the approach of the car which he knew was about to pass down the hill, if, in fact, as he

claims, it was a dangerous place. And it was still more negligent for him to undertake to cross back when the car was so near him."

Respondent argues, however, that it must be presumed, in the absence of proof to the contrary, that the deceased did look and listen, and that he exercised due care in every regard, and cites many authorities to prove that this is the law. Were there no proof in the case bearing upon this matter, it would probably be proper to indulge this presumption. There is no question but that it may and should be invoked in appropriate cases. But this is not one of them. In this case one witness testified that he saw deceased look toward the engine when about fifty feet from the crossing, and that, instead of stopping his horses or turning them aside, he whipped them up and attempted to cross ahead of the engine; others testified to substantially the same acts, but stated them to have occurred just as he was going upon, or crossing, the track. All of these witnesses stated that he whipped up his horses suddenly from a slow walk, and had them trotting, "loping," or jumping at the time of the collision. All of this would indicate that he had not seen or heard the train prior to such time. If he discovered the train in time to have stopped and avoided the collision, and did not do so, but attempted to beat the engine across the track, he certainly contributed to the cause of the collision. If he drove along slowly for a considerable distance, where he might at any time have looked and seen the approach of the engine, but neglected to do so until it was too late to avoid the collision, it is likewise certain that he contributed to the cause of the catastrophe. In either event, there is no room for indulging the presumption which respondent urges. Such a presumption is not to be invoked where there is competent, material evidence upon the question involved. In the case of *Del-*

*aware etc. R. Co. v. Converse,* 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213, the United States supreme court said:

"It is contended that the court erred in not submitting to the jury the issue as to defendant's negligence. Undoubtedly, questions of negligence, in actions like the present one, are ordinarily for the jury, under proper directions as to the principles of law by which they should be controlled. But it is well settled that the court may withdraw a case from them altogether and direct a verdict for the plaintiff or the defendant, as the one or the other may be proper, *where the evidence is undisputed,* or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it. *Phoenix Ins. Co. v. Doster,* 106 U. S. 30, 32; *Griggs v. Houston,* 104 U. S. 553; *Randall v. Baltimore & Ohio Railroad,* 109 U. S. 482; *Anderson County Commissioners v. Beal,* 113 U. S. 227, 241; *Schofield v. Chicago & St. Paul Railway Co.,* 114 U. S. 615, 618. 'It would be an idle proceeding,' this court said in *North Penn. Railroad v. Commercial Bank,* 123 U. S. 727, 733, 'to submit the evidence to the jury when they could justly find only in one way.'"

In the case of *Blakney v. Seattle Electric Co.,* 28 Wash. 607, 68 Pac. 1037, this court held that an inference would not be indulged which contradicted "unquestioned proof."

It is also contended that the submission of the case to the jury was justifiable on the doctrine of "the last clear chance." We do not think it applicable to this case. There was no evidence that those in charge of the locomotive had any reason to believe that the deceased was about to cross the track, until when within fifty feet thereof he began whipping his horses to get across. If they had seen him prior to that time, they would have been justified in believing that he would not attempt to cross the track so as to threaten a collision. In *Christensen v. Union Trunk Line, supra,* this court said:

"It was undoubtedly the duty of the motorman in charge of the car to use all reasonable precautions to prevent injury to the respondent, but it was not negligence on his part not to anticipate that the respondent, who was traveling on the public highway, in the same direction, and by the side of the railway track, would suddenly undertake to cross the track in front of the car. He had a right to presume that the respondent would remain off the track and not knowingly place himself, or his property, in imminent danger. And he was not bound to regulate his speed at such a rate as would certainly avoid injury to any one who might attempt to cross the road in an unreasonable and improper manner."

In the case of *Helber v. Spokane Street R. Co.,* 22 Wash. 319, 61 Pac. 40, this court, speaking by Dunbar, J., at page 322, used this language:

"The universal knowledge of this fact has established a custom, which ought in justice to have the force of law, making it the duty of the party who can more easily and readily adjust himself to the exigencies of the case to do so, and to stop or turn to avoid a collision; and the motorman has the right to presume that such duty will be performed."

In the case at bar, it was not shown that anything was done that precipitated, or omitted that could have avoided, the collision, after the discovery was made that deceased was attempting to cross. There was no evidence showing any negligence in this particular. It is contended that those in charge of the engine should have seen Mr. Woolf sooner and noticed that he was unmindful of the engine's approach, and should have stopped or checked their speed before it was too late. If it was negligence, imputable to the engine operatives, not to have sooner seen deceased, it was likewise negligence for him not to have seen the engine. He had as unobstructed a view as they. His hearing also should have apprised him of their approach. Certainly their negligence was no greater than his. Assuming, as

we must, that they were negligent, it nevertheless appears conclusively that his negligence contributed proximately to the cause of the unfortunate calamity. The doctrine of "comparative negligence" does not obtain in this state. *Franklin v. Engel,* 34 Wash. 480, 76 Pac. 84.

But respondent's counsel argue, with ability and much ingenuity, that the question of contributory negligence was for the jury upon all of the evidence of the case; and that, having passed thereupon, its verdict should be conclusive upon the court. To this we cannot assent. There are many cases where the verdict of the jury is legally and properly conclusive. But where it clearly appears that the jury has disregarded both the evidence and the instructions of the court, its verdict should have no binding force. To uphold such verdicts is not only to do an injustice to the injured party, but tends to encourage unmeritorious litigation, to handicap litigants with meritorious cases, and to deprive our courts of that confidence and respect which should ever be maintained. There is no reason why a verdict should be respected when the record shows conclusively that it is not entitled to respect. Our law is no respecter of persons. The old and young, rich and poor, great and small, corporation and individual, are equally entitled to their rights before the law; and if they do not secure them, there is something wrong—not with the law, but with its administration. If a trial judge disregards the evidence and law in a given case, and makes a decision showing it to be the result of sympathy, bias, prejudice, or other improper consideration, the appellate court does not hesitate to review and reverse his action. We are aware of no reason why the same character of conduct and decision on the part of a jury should be any more sacred. It is doubtless true that most juries are conscientious and try to be fair and honest. The same is

true of most judges. But this constitutes no reason why the occasional unjust and illegal verdict of the one, or like decision of the other, should be permitted to stand. Juries are no more above the law than are judges or other officials or persons. This should be understood and recognized in the administration of justice. Every litigant, regardless of the class of litigation to which his case belongs, is entitled to a fair and impartial trial, and to have substantial justice meted out. Judges and juries are instruments of the law intended to guarantee such rights and bring about such results, so far as may be practicable. When that purpose is thwarted, either by outside influence or inward delinquencies, a wrong is done that should be corrected, if correction is possible. This court has frequently held that verdicts contrary to what all reasonable men ought to find upon the evidence, or obnoxious to conceded or undisputed facts, should not be permitted to stand. *Week v. Fremont Mill Co.*, 3 Wash. 629, 29 Pac. 215; *Oregon R. & Navigation Co. v. Egley*, 2 Wash. 409, 26 Pac. 973, 26 Am. St. 860; *French v. First Ave. R. Co.*, 24 Wash. 83, 63 Pac. 1108; *Hoffman v. American Foundry Co.*, 18 Wash. 287, 51 Pac. 385; *Jennings v. Tacoma R. & M. Co.*, 7 Wash. 275, 34 Pac. 937; *Brown v. Tabor Mill Co.*, 22 Wash. 317, 60 Pac. 1126; *Wilson v. Northern Pac. R. Co.*, 31 Wash. 67, 71 Pac. 713; *Bier v. Hosford*, 35 Wash. 544, 77 Pac. 867; *Olson v. McMurray etc. Co.*, 9 Wash. 500, 37 Pac. 679; *Blakney v. Seattle Electric Co., supra; Hamlin v. Columbia etc. R. Co., ante*, p. 448, 79 Pac. 991; *Anderson v. Inland Tel. etc. Co.*, 19 Wash. 575, 53 Pac. 657, 41 L. R. A. 410.

In the case of *Oregon R. & Nav. Co v. Egley, supra*, this court, speaking by Dunbar, J., said:

"Where there is no conflict of testimony on material points, and there is no testimony tending to establish a

fact, the establishment of which is necessary to warrant a verdict, the court will not hesitate to interfere in the interests of justice and reverse the judgment."

In the case of *McQuillan v. Seattle,* 10 Wash. 466, 38 Pac. 1120, 45 Am. St. 799, this court said:

"There are two classes of cases in which the question of negligence may be determined by the court as a conclusion of law, . . . The first is where the circumstances of the case are such that the standard of duty is fixed, and the measure of duty defined by law, and is the same under all circumstances. . . . And the second is where the facts are undisputed and but one reasonable inference can be drawn from them;" citing Cooley on Torts, 670-1; 2 Thompson on Negligence, §§ 1236-7.

In *Decker v. Stimson Mill Co.,* 31 Wash. 522, 72 Pac. 98, this court, speaking by Mount, J., said:

"It is true that questions of this kind are usually questions of fact for the jury, but, where the facts and circumstances surrounding the case are such that reasonable men could not reasonably and properly find negligence therefrom, then it is the duty of the court to order a nonsuit."

The argument that contributory negligence involves the question of what an ordinarily prudent man would do under all the circumstances and consequently presents a question solely for the jury, is, when applied to the case at bar, unsound in this: in railroad crossing cases the law has prescribed "looking and listening" as precautions essential to "ordinary care" or "ordinary prudence." Hence, as a matter of law, a man crossing a railway track without "looking and listening," cannot be held guiltless of negligence, except in rare cases under extraordinary conditions, none of which obtain in this case. But respondent's counsel say that the law does not fix the particular place where a person must "look and listen."

"The rule [that a party should look] contemplates that this should be done at a time and place when the reasons upon which it is founded should be effective.   When the law requires steps of diligence and caution, it will not be satisfied by the substitution therefor of vain and useless acts." *Snider v. New Orleans etc. R. Co.* 48 La. Ann. 1, 18 South. 695.

When, therefore, the undisputed evidence and established physical facts show that at *any* point within one hundred feet of a crossing a person could see along the railway track for over six hundred feet, and did not do so, or, doing so, undertook to rush across ahead of a rapidly approaching engine, it is difficult to conceive of any theory exempting him from the charge of negligence.

Appellant's challenge to the sufficiency of the evidence, made at the close of the case, and its motion for judgment, should have been sustained.   Aside from the preponderance of the evidence—which was clearly with the defendant— the undisputed evidence and established and conceded facts constituted a complete bar to respondent's recovery.   The verdict of the jury did not change the situation.

The judgment of the honorable superior court is reversed, with instructions to dismiss the action.

Mount, C. J., Dunbar, Crow, and Rudkin, JJ., concur.

Hadley and Fullerton, JJ., took no part.