[No. 5053. Decided April 15, 1905.]

JAMES C. CRISS, *Respondent*, v. SEATTLE ELECTRIC COMPANY, *Appellant*.[1]

STREET RAILWAYS—NEGLIGENCE—INJURY TO PEDESTRIAN AT CROSSING—CONTRIBUTORY NEGLIGENCE.    A plaintiff struck by a street car is guilty of contributory negligence precluding a recovery, where it appears that he was walking diagonally across the track at a crossing of business streets in a city, driving a team of horses before him, in the evening after dark, and saw and heard a street car approaching down a steep grade, one block away, before he started to cross the track, that there was nothing to prevent his looking back and seeing the car as it approached, but that he paid no attention to it until it was upon him and too late to get out of the way.

Appeal from a judgment of the superior court for King county, Albertson, J., entered October 6, 1903, upon findings in favor of the plaintiff, after a trial before the court, a jury being waived, in an action for personal injuries, sustained by a pedestrian struck by a street car at a city crossing.    Reversed.

*Struve, Hughes & McMicken,* for appellant, cited: *Kappus v. Metropolitan St. R. Co.,* 81 N. Y. Supp. 442; *State v. Union R. & Elec. Co.,* 97 Md. 73, 54 Atl. 612; *Medcalf v. St. Paul City R. Co.,* 82 Minn. 18, 84 N. W. 633; *McClellan v. Chippewa Valley Elec. R. Co.,* 110 Wis. 326, 85 N. W. 1018; *Jewett v. Paterson R. Co.,* 62 N. J. L. 424, 41 Atl. 707; *Bornscheuer v. Consolidated Traction*

1Reported in 80 Pac. 525.

*Co.,* 198 Pa. St. .332, 47 Atl. 872; *McGrath v. North Jersey St. R. Co.,* 66 N. J. L. 312, 49 Atl. 523.

*Morris & Southard* and *Benson & Hall,* for respondent, cited: *Second Nat. Bank v. Hatch,* 24 Wash. 421, 64 Pac. 727; *Shea v. St. Paul City R. Co.,* 50 Minn. 395, 52 N. W. 902; *Holmgren v. Twin City Rapid Transit Co.,* 61 Minn. 85, 63 N. W. 270; *Robbins v. Springfield St. R. Co.,* 165 Mass. 30, 42 N. E. 334; *Smith v. Union Trunk Line,* 18 Wash. 351, 51 Pac. 400, 45 L. R. A. 169; *Vasele v. Grant St. Elec. R. Co.,* 16 Wash. 602, 48 Pac. 249; *Mischke v. Seattle,* 26 Wash. 616, 67 Pac. 357; *Chisholm v. Seattle Elec. Co.,* 27 Wash. 237, 67 Pac. 601; *Burian v. Seattle Elec. Co.,* 26 Wash. 606, 67 Pac. 214.

MOUNT, C. J.—This action was brought by the respondent, to recover damages from appellant for personal injuries, caused by one of appellant's street cars striking respondent and breaking his leg. The negligence complained of is stated in the complaint as follows:

"That on the 18th day of December, 1902, at or near the intersection of Ninth avenue and Pike street, in the city of Seattle, while plaintiff was crossing the tracks of defendant on said Pike street, defendant carelessly and negligently, and at a dangerously high rate of speed, to wit, thirty miles an hour, at the bottom of a steep grade, ran one of its cars upon and against the said plaintiff, which said car had just descended said grade, struck the plaintiff, threw him to the ground, and fractured his left leg about four inches above the ankle, the same being a compound fracture, and that the said leg so broken by defendant as aforesaid is now one inch shorter than plaintiff's other leg, and plaintiff is a cripple for life."

The answer of appellant denied all the allegations of negligence, and pleaded affirmatively that the injury was caused by the plaintiff's own negligence. This affirmative matter was denied in the reply. The cause was tried to the

21–38 WASH.

court without a jury, findings were made in favor of the plaintiff, and a judgment for $3,000 was entered thereon. Defendant appeals.

The facts are substantially these: Pike street, in the city of Seattle, extends east and west. It is a business street. Appellant, at the time of the accident, maintained a double track electric railway along this street. Ninth avenue intersects Pike street at right angles. Terry avenue, which is one block east of Ninth avenue, also intersects Pike street at right angles. The distance between Ninth avenue and Terry avenue, on Pike street, is about three hundred and fifty feet. From Ninth avenue, east on Pike street, to Terry avenue, is an up-grade of about ten per cent. At the crossing of the two avenues named, Pike street is nearly level.

During the day of December 18, 1902, respondent, with his team of horses and wagon, had been hauling gravel up this grade on Pike street. In the evening, at about 6:30 o'clock, when it was dark, respondent was coming down the grade, west on Pike street, between Terry and Ninth avenues. He was walking on the south side of the railway tracks, driving his horses in front of him. The horses were dragging the doubletrees, one tug of each horse being hitched to his singletree. When respondent arrived at the foot of the hill, at or near the intersection of Ninth avenue with Pike street, he undertook to cross diagonally over the street railway tracks, to the north side of Pike street, where his wagon stood, a little to the west of Ninth avenue. While in the act of crossing the north track, a car, coming down the grade west on that track, struck him, breaking his leg.

When the car was a block away, at Terry avenue, the respondent saw it, and heard the bell. There is some difference of opinion as to the rate of speed the car came

down the grade. The motorman and conductor placed the speed at from six to eight miles per hour, the car being under perfect control. Two or three witnesses placed the speed at about twenty miles per hour. These witnesses, however, merely estimated this rate, conceding that they were not competent to estimate it accurately. Other witnesses testified that the car was going about the usual rate at that point. The motorman, and a witness who was standing beside him on the front of the car, testified that they did not see the respondent until he came upon the track, about thirty or forty feet ahead of the car. The motorman shouted to respondent, and applied his emergency brake, but the fender of the car struck the respondent, and the car thereafter ran its length before it came to a stop. The respondent himself described the accident as follows:

"A. I had to cross over Pike street—to cross the car tracks—in order to get to the wagon. I looked around naturally, as a man would, to see if there was a car in the neighborhood, and I saw a car up at the next cross street, which was Terry avenue, or Minor—I forget which. The Court: Where were you when you looked around? A. About the west intersection of Ninth avenue with Pike street. I saw the car up there and it is something like 350 feet, I think. I made the measurement—another gentleman and I together—we made a note of it, but I think it was 375 feet—350 or 375. There is where the car was anyway—it was at the next street, which was a block away. Well, I never once thought but what I had plenty of time to get across the street—naturally would think so—and I starts to drive across and was paying attention to my team, and was driving across to hitch on my wagon, and just when I was about to get off the track something attracted my attention—I don't know what it was—and I glanced around and the car was right onto me. It just seemed as though it dropped down that hill. It surprised me very much to think that the car was so close to me, and I made an extra effort to get out of the

way, but it was too late, I was knocked down and my leg broken. Q. State whether or not you stopped at all as you were crossing the street with your team. A. I did not. Q. At what speed were you and the team going? A. Well, I suppose we were going something like two and a half miles an hour—about two and a half or about three miles an hour. This team was what you would call a fast team for heavy work, you had to hold them in considerable to keep them down as they ought to go. Q. In crossing the street did they walk right along? A. Yes, they were pulling on the lines all the time."

There is no evidence that there was anything to prevent the respondent from seeing the car, from the time he saw it and heard it, a block away, until it struck him, except the fact that he was walking with his back or right side to the car as it came toward him. After carefully examining all the evidence, we are convinced that there is no sufficient showing that appellant's car was being run at an excessive rate of speed at and prior to the time of the injury. But, conceding that there was sufficient evidence of that fact, we are satisfied that respondent's negligence contributed to the injury. He saw the car and heard its bells when a block away. He knew it was coming down a steep grade, obliquely to the direction he was going. He was necessarily impeded by the team of horses dragging their doubletrees. The car was lighted and was visible to him all the time; yet he paid no attention to its approach, and did not look for it from the time he saw it a block away, until it was upon him, thereby heedlessly placing himself and his team immediately in front of the car. He had every opportunity to see the car in the dark. The motorman had no opportunity to see the respondent until he came within the rays of the headlight. Under these circumstances, we think there is no escape from the conclusion

that the respondent's own negligence contributed to the injury.

Under the rule announced by this court in *Helber v. Spokane Street R. Co.,* 22 Wash. 319, 61 Pac. 40, and *Woolf v. Washington R. & Nav. Co.,* 37 Wash. 491, 79 Pac. 997, the judgment is reversed, and the cause dismissed.

FULLERTON, DUNBAR, and HADLEY, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.