[No. 8348.  Department Two.  November 15, 1909.]

JOHN C. WILSON, *Respondent*, v. SEATTLE, RENTON &
SOUTHERN RAILWAY COMPANY, *Appellant*.[1]

STREET RAILROADS—COLLISION AT CROSSING—CONTRIBUTORY NEGLI-
GENCE—DUTY TO LOOK AND LISTEN—QUESTION FOR JURY.  The driver
of a team is not guilty of contributory negligence, as a matter of
law, in starting across an electric railway crossing, where he saw a
car that had just passed him standing at a station 230 feet away,
the indications being that it would continue in the same direction,
and he supposed he was crossing the track behind it, when it started
back; and in such a case the plaintiff is not required to stop, look
and listen before driving on the track, but it is the duty of the com-
pany to have the car under control.

Appeal from a judgment of the superior court for King
county, Tallman, J., entered April 1, 1909, upon the verdict
of a jury rendered in favor of the plaintiff, in an action
for personal injuries sustained at a railway crossing.  Af-
firmed.

*Morris B. Sachs*, for appellant.
*Jackson Silbaugh*, for respondent.

MOUNT, J.—On February 19, 1908, the respondent was
injured in a collision between a street car operated by ap-
pellant and a wagon and team of horses driven by respond-
ent.  An action brought against the railway company for
personal injuries resulted in a judgment in favor of the
plaintiff for $3,000.  The defendant appeals from that judg-
ment, and argues that the trial court erred in denying ap-
pellant's motion for a nonsuit, in giving certain instructions,
and denying a motion for new trial upon the ground that
the verdict is excessive.

It appears that, about 7:30 o'clock, on the evening of
February 19, 1908, respondent was driving a heavy wagon
along the shore of Lake Washington, upon a plank roadway

[1]Reported in 104 Pac. 1112.

sixteen feet wide. The street railway followed closely along
this roadway, crossing it at a point known as Weed station,
and again at Oberlin street. At this latter place, the car
line crosses the roadway at an angle, following the roadway
ninety feet in order to cross the same. From Oberlin cross-
ing the car line proceeds on to Rainier Beach station. There
is a slight curve between Oberlin crossing and Rainier Beach
station. The distance between each two of the points named
·is about two hundred and forty feet.

When respondent came up to Weed station, he crossed
the street car track in front of appellant's car, which was
stopped at that point permitting passengers to alight. At
that time the car and respondent were headed in the same
general direction. The car was outward bound from Seat-
tle. The car soon thereafter passed respondent and crossed
Oberlin street ahead of him and proceeded on to Rainier
Beach station. The car was standing at the latter place
when respondent reached Oberlin street. Respondent, think-
ing that the car would go ahead beyond that point, at-
tempted to cross over the tracks. The car, instead of going
beyond Rainier Beach station, immediately started back to-
wards Seattle, and ran into the wagon respondent was driv-
ing, injuring the respondent and destroying the wagon.

The respondent was familiar with the road, and with the
operation of the cars at that place. He knew the place of
crossing and the distances between the stations. The car
track was a single track, and was operated by a block sys-
tem at those points. When a car came into the block, a
light was turned on indicating that the car was going out.
When the car arrived at the end of the block which was be-
yond Rainier Beach station, another light was turned which
would indicate that the car was coming back. These lights
were for the use of the railway company to protect cars
against each other, but respondent was acquainted with
the method of their use, and testified that, when he came to
·Oberlin crossing, he saw the car about two hundred and

thirty feet away at Rainier Beach station, standing still; that he saw the light indicating that the car was going on to the end of the block, and that the other light indicating an approaching car was not burning. He thereupon started to cross the track which, on account of the diagonal position of the track upon the street, required him to travel about sixty-two feet in order to clear the track. After he started to cross the track, he saw the car coming toward him. He called to the motorman and attempted to get out of the way, but failed to do so. The car struck the wagon in the middle, injuring the respondent and damaging the wagon and team. There was a slight curve in the track between Oberlin street and Rainier Beach station. Respondent testified that he did not know the car was coming toward him until it was within about one hundred feet of him, and there is disputed evidence that the car was running at from twenty to twenty-five miles per hour at the time it struck respondent's wagon. There was also evidence to the effect that the motorman could have seen the respondent upon the track in ample time to have stopped the car before running him down.

Appellant argues that, respondent knowing the distances he would have to travel in order to make the crossing, and knowing that the car was coming toward him or would soon be coming back, he was guilty of negligence in attempting to make the crossing ahead of the car. Appellant relies upon the following cases in support of that position: *Criss v. Seattle Elec. Co.*, 38 Wash. 320, 80 Pac. 525; *Coats v. Seattle Elec. Co.*, 39 Wash. 386, 81 Pac. 830; *Davis v. Couer d' Alene & Spokane R. Co.*, 47 Wash. 301, 91 Pac. 839; *Snowdell v. Seattle Elec. Co.*, 54 Wash. 323, 103 Pac. 3.

The last case cited clearly distinguishes this case from the previous cases, and is in point here to the effect that, where a person sees a car coming at an ordinary rate of speed, in a busy street in a populous city, on an up-grade, half a

block away, he is not guilty of contributory negligence, as a matter of law, in assuming that he may cross a street ahead of the car. In this case the car was two hundred and thirty feet away from the respondent. It was standing at a station. The indications were that the car was going away. from respondent, when he started to make the crossing. These facts make an entirely different case from one where a person drives in front of a moving car which he knows, or ought to know, is coming upon him, and which in all probability will be unable to stop. It is claimed by the appellant that, because the respondent could see the car, he was bound to know that it was coming toward him. It is true that he could see it, but at the. time he started to cross the track, he did not know that it was on its way toward him and the indications were that it was going away from him. While he was on the crossing he probably could have seen the car, but the evidence is that after he had started upon the crossing he could not recede; his only escape was to go ahead, and before he could clear the crossing he was run down. In such cases it is the duty of the company to maintain control of the car and be able to stop. There was, therefore, no error in denying appellant's motion for a directed verdict.

After the court had instructed the jury to the effect that it was respondent's duty to stop, look, and listen before attempting to cross a track, the instruction continued as follows:

"But if you find that the car which struck the wagon and team which plaintiff was driving was standing still at the time when plaintiff started to drive across the car track of the defendant, then in that event plaintiff was not required as a matter of law to stop and listen before starting to drive across said car track, unless you find that the conditions surrounding said car and the acts and conduct of those in charge of said car were such as to indicate to an ordinarily careful and prudent person that said car was in the act of starting and was about to start."

Counsel argues that the instruction to the effect that, if the jury found that the car was standing still when respondent started to cross the car track, then respondent was not required to stop and listen unless the surroundings indicated that the car was about to start, was erroneous.  We think there is no error in this instruction.  If the car was in sight but was stopped, or was far enough away so that a reasonably careful person would conclude that he might cross in safety, respondent was not guilty of negligence.  Respondent had a right to cross the railway at that point.  It was a public way.  It was his duty to give way to a car which was approaching so near that a reasonably careful person would not attempt to cross in front of it.  It was likewise the duty of the appellant to have the car under reasonable control at such places.  The duty of the respondent to look and listen was satisfied when he saw the car, and the surroundings indicated that it was stopped or was not coming upon him, and that a reasonably careful person might cross in safety.

It is next argued that the verdict is excessive by reason of the fact that there was no permanent injury proven.  The evidence of the doctors was conflicting upon this point.  After reading the evidence, we are of the opinion that it is not so excessive as to justify a reduction.

The judgment is therefore affirmed.

RUDKIN, C. J., CROW, DUNBAR, and PARKER, JJ., concur.