[No. 15156. Department One. May 9, 1919.]

LORETTA BROWN, *Appellant*, v. WASHINGTON WATER POWER COMPANY, *Respondent*.[1]

STREET RAILROADS (18) — CONTRIBUTORY NEGLIGENCE — PERSON ON TRACKS. A girl seventeen years of age, struck by a street car, is guilty of contributory negligence, as a matter of law, where it appears that she walked between the rails of a double track car line and looked back when a car sounding a gong was about a block away, and then proceeded on the tracks without again looking back or paying any attention to the car, which continued sounding the gong until she was struck.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered April 17, 1914, in favor of the defendant, notwithstanding the verdict

[1]Reported in 181 Pac. 47.

of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a pedestrian struck by a street car. Affirmed.

*Thos. A. Scott* and *Robertson & Miller,* for appellant.

*Post, Russell, Carey & Higgins,* for respondent.

MITCHELL, J.—This is a personal injury case. Plaintiff, Loretta Brown, claimed she was injured through the negligence of defendant. Defendant denied negligence on its part and alleged her injuries were caused by her own fault. The cause was tried by a jury. At the close of plaintiff's case, an unsuccessful challenge to the sufficiency of the evidence to entitle plaintiff to any judgment was made by defendant. The jury returned a general verdict in favor of plaintiff, and answers to five special interrogatories as follows:

"Q. State whether or not the motorman sounded his gong when approaching the plaintiff. And if so, for how great a distance? A. One and a half blocks or 450 feet.

"Q. State whether or not the plaintiff looked or listened for an approaching car at any point east of Magnolia street. A. Yes.

"Q. State whether the plaintiff when crossing Napa street was walking in the north track or in the space between the two tracks. A. Between the two tracks.

"Q. Did plaintiff at any point east of Magnolia street take any precaution to avoid a collision with the car on the south track? A. Yes.

"Q. If you answer the last question in the affirmative, state what precaution she so took. A. By looking back."

Thereupon defendant moved for a judgment *non obstante,* on the law, evidence, and answers to the special interrogatories. The motion was granted, a judgment of dismissal entered, and plaintiff has appealed.

Appellant was a high school girl, between seventeen and eighteen years of age, and was injured about 2 o'clock in the afternoon, on Illinois avenue, in Spokane, by a moving car operated by respondent. The avenue runs in an easterly and westerly direction along the top of a bluff above the river to the south. The Great Northern Railway track parallels the avenue, its track being along the side of the bluff, fifteen to twenty feet below the surface of the avenue. Streets running from the north down into the avenue near the place where the collision occurred, in their order going from west to east, are Madelia, Pittsburg, Magnolia, Napa and Crestline. The blocks between these last-named streets front three hundred feet on the avenue, except the one between Napa and Crestline streets, which has a front of five or six hundred feet. The car line is a double-track system, the tracks being five feet or more apart, running along the avenue, which is straight and level from a point several blocks west of Madelia street, thence eastward to Crestline street where it turns north.

Ordinarily, on the north side of the avenue where the accident occurred, next to the property line, there was a well-beaten path, which disputed testimony showed to be difficult of travel on the day in question because of gravel, earth, lumber and debris thrown about in the construction of a city sewer just north of and paralleling the north track of the car line. There was no sidewalk or pathway along the south side of the avenue on the edge of the bluff. There were no obstructions on either of the car tracks or the space between them from a point several blocks west of Madelia street to Crestline street. Appellant had been living on Madelia street, near the avenue, for some time, and was accustomed to taking the avenue

street cars to her school. She had frequently walked along this portion of the avenue, and was familiar with the location of the car tracks and the fact that street cars were operated thereon—the south track being used by cars going east, the other track by cars going west. At the time in question, she came south from her home on Madelia street to the north sidewalk line of the avenue, turned east, walked in a beaten pathway nearly two blocks, crossed Pittsburg street to a point near Magnolia street, then dropped down into the space between the two car tracks. She testified that at this place she looked in each direction, saw no car, and that afterwards she paid no more attention to the street cars and saw or heard none. She walked rapidly towards the east between the car tracks, crossed Magnolia street and on to a point about one hundred feet beyond Napa street, when she was struck on the right side of her head and hip by the left front of the street car going in the same direction, on the south car track.

On the other hand, the motorman testified that, in approaching her, he continuously sounded the gong of the car, commencing at a distance of a block and a half before striking her. The jury so found. He further testified that, when his car was about a block from where the collision occurred, while he was ringing the gong, "she turned around and looked down the street, and she turned back and kept on walking." This evidence satisfied the jury, notwithstanding her testimony to the contrary; for, by answers to special interrogatories, the jury found she *looked back* when she was at a point east of Magnolia street. All the witnesses on both sides who testified on the subject agreed that twenty-five to thirty feet before striking appellant the motorman reversed the car by its emer-

gency appliance, and stopped it about twenty-five feet after striking the girl, who fell to the side and just in front of the rear trucks of the street car. At the time of the accident, a train of freight cars was running alongside on the Great Northern Railway track in the same direction the street car was going.

By the traffic ordinance of the city the maximum speed at which street cars were allowed to be run in the residence portion of the city was fifteen miles per hour. Concerning the speed of the car, one of appellant's witnesses, a passenger, on being asked if he could tell the rate of speed at which the car was going when the girl was struck, answered: "Well, I would say at least twenty miles an hour, possibly a little more;" but on cross-examination he said:

"I did not state to the agent that I was unable to state at what rate of speed the car was running. I cannot state accurately. I am not an expert on rate of speed although I have ridden on trains, street cars, and automobiles. I never ran an automobile. I was never a street car conductor or motorman. I never timed a street car."

The other witnesses estimated the speed of the car at from five to fourteen miles per hour until the reverse was thrown on. Several of the witnesses testified that the speed of the car was gradually reduced after commencing to sound the gong. During all of the time appellant was on the avenue, prior to the accident, there was no street car upon the north track.

The different situations, one shading into something unlike the others, presented by the cases on the subject of personal injuries, with their resultant rules and determinations, suggest at once that the chief concern in deciding the average case of this sort is not so much to discover some well-established rule or principle, but to keep well in mind the facts in the case at

hand, so as to properly apply such rules. This is not a street-crossing case where the motorman must have in mind those already in view and expect others to come into danger of his car at any moment; but a situation in front of a long city block with a single pedestrian in view, both going in the same direction, their lines not crossing nor even converging, each cognizant of the other's movements.

In the law, each of the parties had a right to the use of the street, and each knew that the other was aware of such right; each knew the street car, in its operation, was confined to a track, and that appellant, a girl about grown, in a moment of time and with a trifle of effort, could get out of danger, and each knew the other was aware of such conditions. There was available to her the less dangerous way on the north track on which she would be instantly and constantly aware of danger from a car on that track and positively free from any harm by a car on the south track. The motorman was held to the duty of having seen her, and he did see her, in sufficient time to have avoided any danger of injury. With the car tracks before her, and her familiarity with the street car operations, she was held to the obligation of seeing the approaching street car in sufficient time to have saved herself; and, although she denied having seen it, since the jury found upon sufficient evidence that she looked back at a place and time when the car, under a sounding gong, was within the distance of a block approaching her, she is held responsible, in the law, to the same extent as if she had admitted seeing it at that time.

In such situation the motorman, continuing to sound the gong, had the right to assume that she would take care of herself, as obviously he did assume, until get-

ting within twenty-five to thirty feet of her, when she yet had time to protect herself, upon noticing her inattention to her own duty of self-preservation, he promptly did all within his power to avoid injuring her by throwing his car into reverse. Counsel for appellant contends, however, with considerable earnestness, that because of the noise made by the moving freight train, there was a greater duty imposed upon the motorman to look after the welfare of the appellant. The argument is faulty in this case because, notwithstanding such noise, he knew her vision was unimpaired and had just been employed in observing his car approaching nearby, which knowledge, with the continued use of the gong, properly shaped his conduct until an emergency arose, when he acted with all the promptness and means at his command.

The case of *Mey v. Seattle Elec. Co.*, 47 Wash. 497, 92 Pac. 283, was a case where a pedestrian, traveling in the same direction the car was going, walked along a street car track in Seattle at a point where the sidewalk and part of the street were fenced off or taken up with building operations, but where there was room every few feet to step out of the way to allow cars to pass, and he failed to keep a lookout and was struck and injured by a car. The trial court granted a motion for a nonsuit on the grounds of failure of proof of any negligence on the part of the defendant and because it appeared that the plaintiff was guilty of contributory negligence. This court affirmed the judgment, and in the opinion, written by Judge Dunbar, said:

"We think the court did not commit error in sustaining this motion. While this court, in common with all other courts, has held that the right to use the street was a joint right with the ordinary traveler, whether equestrian or pedestrian, yet it has always

recognized the patent fact that the cars traveling on fixed tracks must of necessity be accorded the right of way under ordinary circumstances. If this were not true the management and running of street cars in a city would be rendered impracticable if not impossible."

Again, the court said:

"There being room for the pedestrian to step out of danger every few steps all along the route which he traveled, the motorman we think might well be justified in concluding that a pedestrian would step out of the way of the car instead of remaining on the track or *so close to the track* that he would be run down by it. This case we think falls squarely under the rule heretofore announced by this court in *Duteau v. Seattle Electric Co.*, 45 Wash. 418, 88 Pac. 755; *Coats v. Seattle Electric Co.*, 39 Wash. 386, 81 Pac. 830; *Criss v. Seattle Electric Co.*, 38 Wash. 320, 80 Pac. 525, and *Skinner v. Tacoma R. & Power Co.*, 46 Wash. 122, 89 Pac. 488."

In *Kiely v. Seattle Electric Co.*, 78 Wash. 396, 139 Pac. 197, the plaintiff, while working at a manhole between the tracks of the street railway, was injured by a passing car. It was denied that he had any right to recover because of his contributory negligence. This court, citing and relying upon cases from this and other courts, said:

"Although respondent was rightfully in the street, it was his duty to exercise reasonable care to learn of the approach of cars; a turn of the head and a glance of the eye would have been sufficient, especially when a signal was given by the ringing of a repeating gong. The manhole at which respondent was standing was between appellant's east and west tracks. Respondent was required to take only one or two steps towards the easterly track upon which no car was approaching; an act requiring but an instant of time. It is impossible to see how he could have failed to remove himself from the zone of danger in the face

of the approaching car, even though it was running at an excessive speed, without being guilty of contributory negligence as a matter of law.''

Our conclusion in this case, sustaining the lower court, does no violence to the rule that, if there is evidence or reasonable inference from evidence sufficient to sustain the verdict, a motion *non obstante* will not be granted. Here the special findings of the jury and the undisputed evidence on the other essential and controlling facts, in the light of the applicable decisions of this court, negative any negligence on the part of the respondent and show that the proximate cause of appellant's injury was her own carelessness.

Judgment affirmed.

CHADWICK, C. J., TOLMAN, MACKINTOSH, and MAIN, JJ., concur.